**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 0:21-64-DLB**

**DENVER McFADDEN,**                                                                                    **PLAINTIFF**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**BUREAU OF PRISONS, et al.,**                                                             **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

Plaintiff Denver McFadden was previously confined at the Federal Correctional Institution ("FCI")-Ashland, located in Ashland, Kentucky.   Proceeding without an attorney, McFadden filed a civil complaint pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., against Defendants the federal Bureau of Prisons ("BOP"), FCI-Ashland, Lieutenant Jennes, Counselor Nicely, Officer Damron, Mr. Baier (the Director of Health Services at FCI-Ashland), and Ms. Whitson (a medical provider at FCI-Ashland).  (Doc. #1).  By prior Order, the Court granted McFadden's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. #8).[1]  Thus, the Court must conduct a preliminary review of McFadden's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.

---

[1]      Although the Court previously dismissed this case without prejudice for failure to prosecute and failure to comply with a Court Order (Doc. #10, 11), the Court set aside the Order of Dismissal and Judgment and reinstated this action.  (Doc. #14).

Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is obviously immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates McFadden's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8. In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

**I.**

In his complaint, McFadden generally alleges that "[a] pattern and prevalence of harassment, disrespect, cruelty, and traumatization existed on November 20, 2018, until I left [FCI-Ashland] on August 26, 2020." (Doc. #1 at p. 2). He further states that "defendants constantly showed…disrespect of me due to my charges, my disabilities, and my request to be treated with respect as the Bureau of Prisons indicates in its Mission

2

Statement." (*Id*. at p. 2-3).[2]  Although McFadden's complaint does not allege the nature of his disabilities, he alleges that Baier and Whitson ignored his request for accommodations under the ADA and that no treatment plan was ever developed "despite my specific request for help outlined in [the] ADA." (*Id*.).

With respect to his claims that he was shown "disrespect," McFadden refers to a specific incident on July 16, 2016, on which he states that Lt. Jennes asked McFadden why Jennes should respect him. (*Id*. at p. 4).  McFadden claims that this was in response to a prior complaint that McFadden had made about Jennes to the Warden complaining that Jennes "very rudely" told McFadden that he could not be out in the hallway to walk for exercise during a lockdown. (*Id*.).  After McFadden told him that the Mission Statement requires staff to treat inmates with respect, McFadden claims that Jennes responded that "I will never respect you and neither will any staff member here because you messed with minors." (*Id*.).

McFadden also states that he filed a complaint against his Unit Counselor, Nicely, for "confrontational language" directed toward McFadden because of his charges. (*Id*.).  He states that Jennes and Nicely "verbally abused" him and that Nicely slammed the Unit door in his face causing a nosebleed. (*Id*.).  He also claims that Nicely is a "raving lunatic tyrant" and uses "degrading and provoking language to me and others frequently." (*Id*.).  McFadden further alleges that Officer Damron, Jennes, and Nicely "had no regard to their jobs and assignments by the Bureau of Prisons to give professional respect to all inmates

---

[2]      In February 2018, McFadden pled guilty in the United States District Court for the Southern District of New York to one count of travel with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) and one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2).  *United States v. McFadden*, No. 1:17-cr-463-LAK-1 (S.D. N.Y. 2017).

even including Sex Offenders who they even treated with more contempt, anger, rage, provoking and confrontational behavior."   (*Id.*).   He alleges that Jennes and Nicely "threatened me and traumatized me placing me in fear of my life causing me massive trauma mentally."   (*Id.*).   He further claims that Jennes made a remark that McFadden should "go back to [his] Unit and take [his] life."   (*Id.* at p. 5).

He alleges that all of this conduct has caused him to fear for his life, have suicidal thoughts, and has caused trauma, anxiety, PTSD, night terrors, depression, tremors, and "restless leg and body syndrome."   (*Id.* at p. 5).   His complaint also makes vague references to his "tort" claims, although he does not clearly articulate any particular tort claim that he seeks to pursue, nor does he make any reference to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.   Rather, he invokes his rights under the federal ADA, the Equal Protection Clause, the Due Process Clause and "Article 4 with regard to cruel and unusual punishment."   (*Id.* at p. 6).   As relief, he requests that the Court "approve my tort claims for punitive damages from the [BOP] for $750,000, Lt. Jennes in the amount of $250,000, Officer Damron in the amount of $200,000, Counselor Nicely in the amount of $200,000, Medical Director Baier in the amount of $50,000, and my medical provider Ms. Whitson in the amount of $25,000."   (*Id.* at p. 10).[3]

After conducting a preliminary review of McFadden's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court finds that a response is required from Counselor

---

[3]      Again, despite McFadden's reference to his "tort claims," he does not seek to bring any tort claim against the United States pursuant to the FTCA.   Rather, his complaint specifically alleges ADA claims and constitutional claims against the individual officers that he claim violated his rights, which are claims brought pursuant to *Bivens*.   Moreover, even if McFadden had specifically alleged an FTCA claim against the United States, he seeks punitive damages for his "tort" claims, which are not available in an FTCA lawsuit.   28 U.S.C. § 2674.

Nicely with respect to McFadden's allegations that Nicely slammed a door in McFadden's face causing physical injury, which, broadly construed, alleges a claim for violation of the Eighth Amendment.   However, McFadden's remaining claims will all be dismissed on initial screening for failure to state a claim for which relief may be granted.

**II.**

**A.    McFadden's ADA Claim**

In his complaint, McFadden alleges that the Director of Health Services Baier and his medical provider Whitson "ignored my request for accommodations under the ADA. (Doc. #1 at p. 2).   He also alleges that "no committee or treatment plan was ever developed despite my specific request for help" and that the defendants "totally disregarded" his disabilities contrary to the ADA.  (*Id*. at p. 2-3).

The ADA generally prohibits public entities from discriminating against individuals with disabilities, including by failing to make reasonable modifications in policies, practices, or procedures when necessary to afford such services or accommodations to individuals with disabilities. 42 U.S.C. § 12101 *et seq*.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *See* 42 U.S.C. § 12132.[4]  "A Title II plaintiff may bring a claim for intentional discrimination or for failure to

---

[4]    Title I of the ADA prohibits discrimination on the basis of disability in regard to employment, *see* 42 U.S.C. § 12112, while Title III, which applies to private entities, prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182. While there is some overlap in the legal standards that apply to claims brought under Titles I, II, and III of the ADA, neither Title I nor Title III directly apply here.

provide a reasonable accommodation." *Jones v. City of Detroit, Michigan*, 20 F.4th 1117, 1119 (6th Cir. 2021)

As an initial matter, McFadden's complaint fails to identify any specific disability that is the basis for his ADA claim.  To adequately allege a claim of intentional discrimination under the ADA, a plaintiff must allege that: "(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).  Similarly, a reasonable accommodation claim also requires the plaintiff to show that he or she is disabled within the meaning of the ADA.  *See* 42 U.S.C. § 12132.

In addition to this pleading deficiency, while the ADA permits a claim against a "public entity," neither federal employees nor the federal government itself are included within this definition.  *See* 42 U.S.C. § 12131 (defining "public entity" to include "any State or local government," state or local governmental departments or agencies, and the National Railroad Passenger Corporation and any commuter authority).  *See also Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities.") (citations omitted); *Burkett v. Booker*, No. 06-CV-161-KSF, 2006 WL 2583371, at *4 (E.D. Ky. Sept. 7, 2006) ("[W]hile the ADA applies to state prisons, it does not apply to federal prisons or federal entities or to individuals.") (cleaned up); *Agee v. United States*, 72 Fed. Cl. 284, 289 (2006) ("Congress has not waived the Federal Government's sovereign immunity with regard to ADA claims"); *Gray v. United States*, 69 Fed. Cl. 95, 102 (2005) ("As the United States has not waived its sovereign immunity to

be sued under the ADA in the manner plaintiff seeks, this court has no alternative but to dismiss plaintiff's ADA claim.").  Thus, McFadden may not pursue an ADA claim against Baier or Whitson.[5]

## B.    McFadden's Constitutional *Bivens* Claims

## 1.    Claims against the BOP and FCI-Ashland

Broadly construed, McFadden's complaint seeks monetary relief for claims arising under the Fifth, Eighth, and Fourteenth Amendments.[6]  Such claims may only be pursued under *Bivens*, which held that an individual may "recover money damages for any injuries...suffered as a result of [federal] agents' violation of" his constitutional rights.  *Bivens*, 403 U.S. at 397.  However, a *Bivens* claim is only properly asserted against individual federal employees in their individual capacities.  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991).  Thus, McFadden may not bring a *Bivens* claim against the BOP or FCI-Ashland (a BOP facility).  *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity.  The prisoner may not bring a *Bivens* claim against

---

[5]     The United States has waived its sovereign immunity under the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq.*, which contains a similar nondiscrimination provision as the ADA, 20 U.S.C. § 794(a).  However, even if the Court broadly construed McFadden's claim as a claim for relief under the RA, the Supreme Court has specifically held that this waiver does not apply to awards of monetary damages for violations of the RA.  *See Lena v. Pena*, 518 U.S. 187, 189 (1996).  As this is the only relief McFadden seeks, even if he had invoked the RA instead of the ADA, his RA claim would fail.

[6]     Although McFadden's complaint alleges that his rights under "Article 4 with regard to cruel and unusual punishment" have been violated (Doc. #1 at p. 6), the prohibition against cruel and unusual punishment is set forth in the Eighth Amendment.  Construing McFadden's allegations broadly, the Court will construe his "Article 4" claim to be an Eighth Amendment claim.

the officer's employer, the United States, or the BOP."). Accordingly, McFadden's constitutional claims against the BOP and FCI-Ashland will be dismissed.

## 2. McFadden's Constitutional Claims against the Individual Officials

While *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Iqbal*, 556 U.S. at 676-677. *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). In order to recover against a given defendant in a *Bivens* action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). Indeed, "[e]ven a pro se prisoner must link his allegations to material facts…and indicate what each defendant did to violate his rights…" *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Thus, to proceed with each of his *Bivens* claims against each defendant, McFadden must: 1) allege the violation of a constitutional right; 2) link his allegations to material facts; and 3) indicate what each individual defendant against whom he asserts a particular claim did to violate his constitutional rights.

McFadden does not allege that either Baier or Whitson did or did not do anything in violation of his constitutional rights. Rather, his claims against Baier and Whitson are based upon his allegations that they ignored his requests for accommodations under the ADA. Because McFadden fails to allege that either Baier or Whitson were personally involved in any deprivation of McFadden's constitutional rights, he may not pursue monetary relief against either of them pursuant to *Bivens*.

Moreover, while McFadden invokes his Due Process rights, he does not allege any facts in support of such a claim, nor does he clearly identify any Defendant against whom this claim is asserted.  While the Court construes *pro se* pleadings with some leniency, it cannot create claims or allegations that the plaintiff has not made.  *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf.") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).  Accordingly, McFadden's Due Process claim will be dismissed.  *See* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### a.  McFadden's Equal Protection Claim

Turning to McFadden's equal protection claim, the Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985).[7]  Thus, "[a] plaintiff may state a claim for an equal protection violation by alleging 'discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference.'" *Flinchum v. City of Beattyville*, 224 F. Supp. 3d 536,

---

[7]     The Equal Protection Clause if the Fourteenth Amendment, by its terms, applies to the States.  *See* U.S. Const. amend. XIV ("No State shall…deny to any person within its jurisdiction equal protection of the laws.").  However, while "[t]he Fifth Amendment…does not itself contain a guarantee of equal protection, [it] instead incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment.  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citations omitted).  Thus, Fifth Amendment equal protection claims against the federal government are evaluated the same way as equal protection claims against state and local governments under the Fourteenth Amendment.  *Id*.

542 (E.D. Ky. 2016) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011)).

First, the factual basis for McFadden's equal protection claim is not entirely clear. McFadden does not identify a "fundamental right" that he claims has been burdened.  And while he vaguely alleges that "[t]he defendants constantly showed…disrespect of me due to my charges, my disabilities, and my request to be treated with respect," (Doc. #1 at p. 2), he makes no factual allegation even suggesting that any individual defendant treated him differently or  discriminated against him because of his unidentified disability.  Absent factual allegations supporting such a claim, McFadden's entirely conclusory claim that the defendants disrespected him because of his disability is insufficient to state a claim for relief, as "[l]egal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir. 2010) (other citations omitted)).  *See also Twombly*, 550 U.S. at 555; *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 (6th Cir. 2011) (allegations of disparate treatment amounting to "conclusory and unadorned assertions…are not well-pleaded, and not entitled to a presumption of truth" at the pleading stage of the litigation); *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008) ("[I]n the context of a civil rights claim,... conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim.") (quoting *Lillard v. Shelby Co. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).

Rather, McFadden's factual allegations are that Jennes, Nicely, and Damron treated McFadden harshly and with a "lack of respect" based on McFadden's status as a sex offender, a group whom Jennes, Nicely, and Damron treated "with more contempt,

10

anger, rage, provoking and confrontational behavior."   (D.E. #1 at p. 4).   However, convicted sex offenders are not a suspect class for purposes of an equal protection claim. *See Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) ("Convicted sex offenders are not a suspect class.").   *See also Johnson v. Merlak*, No. 4:18-CV-1062, 2018 WL 5295876, at *3 (N.D. Ohio Oct. 25, 2018); *Hearld v. Haney*, No. 4:14-CV-P119-JHM, 2015 WL 1884357, at *4 (W.D. Ky. Apr. 24, 2015).   Thus, McFadden's allegations that sex offenders, like himself, were treated less respectfully than other prisoners fails to state an equal protection claim.

Moreover, even if McFadden did adequately allege an equal protection claim, the monetary relief sought by McFadden is unavailable, as such a claim does not fall within the three existing contexts in which the United States Supreme Court has recognized a private right of action for damages for a constitutional violation.  Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in only three circumstances:   (1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980).  *See Ziglar*, 137 S.Ct. at 1854-55.

However, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them."  *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (recognizing that, since *Bivens*, *Davis*, and *Carlson*,

"[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb.").  Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*."  *Hernandez v. Mesa*, 140 S. Ct. 735, 743, 206 L. Ed. 2d 29 (2020).  *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that "[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants.").

In *Ziglar*, the Supreme Court re-emphasized that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," explaining:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis.  The question is "who should decide" whether to provide for a damages remedy, Congress or the courts? *Bush v. Lucas,* 462 U.S. 367, 380, 103 S.Ct. 2404 (1983).

> The answer most often will be Congress.  When an issue "'involves a host of considerations that must be weighed and appraised,'" it should be committed to "'those who write the laws'" rather than "'those who interpret them.'"  *Ibid.* (quoting *United States v. Gilman,* 347 U.S. 507, 512–513, 74 S.Ct. 695, 98 L.Ed. 898 (1954)).

*Id*. at 1857.

Under *Ziglar*, the Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials.  First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*.  *Hernandez*, 140 S.Ct. at 743 (citations omitted).  Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be  regarded "as 'new' if it is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court.]"  *Id*.  (quoting *Ziglar*, 137 S.Ct. at 1859).  A difference is "meaningful" if, for example, it involves a different constitutional rights, a different category of officers as

defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion.  *Ziglar*, 137 S.Ct. at 1860.

If the Court finds that a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Ziglar*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18).  This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id*. at 1857-58.  Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action…will almost always be never."  *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied,* No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022).  "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?  If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie."  *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up).

In this case, it is plain that McFadden's equal protection claim presents a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*.  While, like the claim implied in *Davis*, McFadden's claim sounds in the Fifth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez*, 140 S. Ct. at 743.  Without question, McFadden's claim that he has been discriminated against on the basis of his status as a sex offender is a completely different context than the Fifth Amendment claim in *Davis*

13

against a Congressman who terminated an employee on the basis of gender.  *Ziglar*, 137 S.Ct. at 1864 (noting that even a "modest extension" of a prior Supreme Court case constitutes a new context).

The Court must therefore proceed to the second step in the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to this new context.  *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019).  The Sixth Circuit has recognized that because "separation of powers should be a guiding light…the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress."  *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937, 210 L.Ed.2d 207 (2021)).

There are multiple reasons that a judicially-implied remedy for damages is not appropriate here.  First, through 42 U.S.C. § 1983 Congress long ago created a statutory cause of action against state actors for violations of constitutional rights.  But it has never done so federal actors.  To the contrary, more recently Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits.  But the Act itself does not provide for a standalone damages remedy against federal jailers.  It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, there are several alternative means for prisoners to vindicate their constitutional rights.  For federal inmates, the Bureau of Prisons' inmate grievance

14

program provides a ready and viable mechanism to challenge staff misconduct.  *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring.").  This remedy is not considered less effective merely because it is created by regulation rather than by statute. *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988) ("The absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted).

Nor is the grievance program considered any less effective a remedy because it does not provide the deterrence afforded by damages.  In fact, the Supreme Court has expressly rejected this argument.  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) ("... we have also held that any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified.").  "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'"  *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S.Ct. at 1858).

Thus, courts have consistently held that the Bureau of Prisons' inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under

*Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases); *see also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."). Likewise, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct.

Finally, the context of McFadden's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' – counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85). *See also Earle v. Shreves*, 990 F.3d 774, 780-81 (4th Cir. 2021) ("Given the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts.").

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S.Ct. at 1803 (quoting *Hernandez*, 140 S.Ct. at 743). Thus, because there

are multiple factors that counsel strongly against implying a *Bivens* remedy for McFadden's equal protection claims alleging discrimination based on his crimes of conviction, the Court may not do so here.  *See Harris v. FBOP*, No. 19-3585, 2020 WL 7586968 (6th Cir. Sept. 22, 2020) (district court did not err in declining to extend *Bivens* remedy to prisoner's "right-to-marry" claim brought under the equal protection component of the Fifth Amendment's due process clause); *Zelaya v. Hammer*, 516 F. Supp. 3d 778, 796 (E.D. Tenn. 2021) (declining to extend a Bivens remedy to plaintiffs' equal-protection claim under the Fifth Amendment); *Banks v. LaRose*, No. 4:17CV2479, 2018 WL 1942195, at *3 (N.D. Ohio Apr. 25, 2018) (declining to extend a *Bivens* remedy to plaintiff's equal protection claim based on the classification of prisoners in segregations versus those held in the general prison population); *Johnson v. Merlak*, No. 4:18-CV-1062, 2018 WL 5295876, at *2 (N.D. Ohio Oct. 25, 2018) (declining to extend a *Bivens* remedy to claim that defendant violated plaintiff's right to equal protection as a sex offender).

Because *Bivens* does not extend to provide a monetary remedy for McFadden's claim – which is the only remedy that he seeks – he fails to state a claim for which relief may be granted.  *Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").  For all of these reasons, McFadden's equal protection claim will be dismissed.

### b.  McFadden's Eighth Amendment Claim

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or "involve[s] the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citation omitted).

The Eighth Amendment "does not mandate comfortable prisons," but requires prison officials to provide inmates with "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987). Rather, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). A prison official violates the Eighth Amendment only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) and (2) the prison official has a "sufficiently culpable state of mind," which is "one of 'deliberate indifference' to inmate health or safety." *Id*. (quoting *Wilson*, 501 U.S. at 297) (other citations omitted).

While his complaint is not entirely clear, it appears that McFadden's claim that he was subjected to "cruel and unusual" punishment in violation of the Eighth Amendment is based on his factual allegations that Jennes, Nicely, and Damron treated McFadden "rudely," with a "lack of respect," and that they verbally abused McFadden by using "degrading and proving language" towards McFadden. (Doc. #1 at p. 4).[8] McFadden

---

[8]     McFadden also alleges that "the defendants careless behavior ignored my medical history in my files showing complete and utter negligence of my human rights. I was under their care and control as agents of the Bureau of Prisons with them showing cavalier and heavy-handed medical indifference and negligence addressing my needed care." (*Id*. at p. 3). However, he does not identify any specific serious medical need for which he was denied treatment, nor does he identify any individual defendant whom he alleges denied him medical care. McFadden's fleeting reference to "medical indifference," without more, is insufficient to state a claim for relief, as vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are not sufficient. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL

also alleges that Nicely "slammed the Unit door in [McFadden's] face causing a nosebleed." (*Id*).

The Court finds that a response is required from Counselor Nicely with respect to McFadden's claim that he used excessive force against him by slamming the door in his face and causing physical injury in violation of the Eighth Amendment. Because McFadden in proceeding *in forma pauperis*, the United States Marshals Service ("USMS") will serve Nicely with summons and a copy of the complaint on his behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

However, McFadden's Eighth Amendment claims based on his allegations of verbal harassment will be dismissed for failure to state a claim for which relief may be granted. Reprehensible as the verbal harassment by Jennes, Nicely, and Damron may have been (if true), it is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding harassment and verbal abuse, while "shameful and utterly unprofessional...[they] do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey*, 832 F.2d at 955. *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("[t]he use of racially derogatory language, while unprofessional and

---

1901250, at *2 (E.D. Mich. April 25, 2008). Nor are allegations made against "defendants" as a group, with no particular conduct attributed to any specific individual defendant, sufficient as federal notice pleading requires, at a minimum, that the complaint advise each defendant of what he allegedly did or did not do that forms the basis of the plaintiff's claim against him. *Iqbal*, 556 U.S. at 678; *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

deplorable, does not violate the Constitution."); *Jackson v. Hopkins Cnty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. 2012) ("[W]hile reprehensible and not condoned, racial epithets and verbal abuse alone are insufficient to state a constitutional violation under § 1983.").

Moreover, an Eighth Amendment claim based on allegations of verbal harassment undoubtedly presents a "new context" from the Eighth Amendment claim inferred in *Carlson* based on allegations of deliberate indifference to a prisoner's serious medical needs.  In addition, the same "special factors" discussed herein that counsel hesitation before extending a *Bivens* remedy to McFadden's equal protection claim are equally applicable here with respect to his Eighth Amendment claim based on allegations of verbal harassment.  For these reasons, even if McFadden's allegations of harassment were sufficient to state a claim for an Eighth Amendment violation, the Court would decline to extend a *Bivens* remedy for damages to such a claim in light of the Supreme Court's clear directions in *Ziglar*, *Hernandez*, and *Egbert*.

Accordingly, it is hereby **ORDERED** as follows:

1.     To the extent that McFadden's complaint (Doc. #1) alleges that Counselor Nicely slammed a door in McFadden's face causing physical injury in violation of the Eighth Amendment, this claim **REMAINS PENDING** and Nicely will be served in accordance with the instructions below;

2.     The remainder of McFadden's complaint (Doc. #1) is **DISMISSED** and the following are **DISMISSED** as Defendants: the BOP, FCI-Ashland, Lieutenant Jennes, Officer Damron, Mr. Baier, and Ms. Whitson;

3.  The Deputy Clerk shall prepare a "Service Packet" for service upon Defendant Counselor Nicely.  The Service Packet shall include:

   a.  a completed summons form;

   b.  the complaint (Doc. #1);

   c.  the Order granting Plaintiff *in forma pauperis* status (Doc. #8);

   d.  this Order; and

   e.  a completed USM Form 285.

4.  The Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket;

5.  The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.;

6.  The USMS shall personally serve Defendant Counselor Nicely at FCI-Ashland in Ashland, Kentucky through arrangement with the Federal Bureau of Prisons;

7.  McFadden must immediately advise the Clerk's Office of any change in his current mailing address.  **Failure to do so may result in dismissal of this case**; and

8.  If McFadden wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office.  Every motion McFadden files must include a written certification that he has mailed a copy of it to the Defendant or its counsel and state the date of mailing.  **The Court will disregard**

**letters sent to the judge's chambers or motions lacking a certificate of service.**

This 18th day of August, 2022.



Signed By:
*David L. Bunning*
United States District Judge

L:\DATA\ORDERS\PSO Orders\0- 21-064 McFadden - Screening Memorandum.docx